# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | |
| MICHAEL D. BRANDNER, | |
| Defendant. | Case No. 3:13-cr-00103-SLG |

## ORDER OF RESTITUTION

Before the Court at Docket 342 is the United States' Motion for Order of Restitution. Defendant's Response to the motion is at Docket 349, and the Government filed a Reply at Docket 361. The Government seeks the entry of a restitution award in the amount of $3,259,700 payable to Sheila Brandner, and an award in the amount of $27,000 payable to Attorney Robert Woofter.

Defendant opposes any award of restitution. He first observes that one of the alleged victims, Sheila Brandner, did not submit a victim impact statement, and has otherwise refused to participate in the restitution process. At a minimum, Defendant maintains that the Court should afford Ms. Brandner the opportunity to be heard on the motion. However, Ms. Brandner has provided a letter to the Court;[1] she also addressed the Court at the sentencing hearing. Clearly, Ms. Brandner does not perceive herself to be a victim of Dr. Brandner as she defines that term. At sentencing, she stated, "I'm obviously the person in question here where [it's] been said that I'm a victim, and I

---

[1] Docket 366-1.

disagree. I think Michael [Brandner] has been a victim."[2]  In Ms. Brandner's letter to the Court, she discussed her firm belief that Dr. Brandner lacked any criminal intent; rather, in her view he sought only to protect the family's assets when he secretly moved them out of the United States.[3] Sheila Brandner has made her position well known to the Court, and the Court has fully considered it.

The applicable statute is the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. In enacting the MVRA, Congress eliminated a court's discretion as to whether to award or deny restitution; this discretion was previously vested in district courts by the Victim and Witness Protection Act ("VWPA").[4]  A district court is now required to order restitution to a victim whenever a defendant is convicted of certain types of crimes, including one of the types of crimes at issue in this case: wire fraud.[5]  Congress did not, however, mandate that a victim cooperate with the restitution process; rather, "[n]o victim shall be required to participate in any phase of a restitution order."[6]  Congress also provided that a victim may assign her interest in the restitution to the Crime Victims Fund ("CVF").[7]  The statute is silent on how a district court should proceed when a victim refuses the restitution that a court is required to award.

---

[2] Docket 363 at 32.

[3] *See* Docket 366-1; Docket 363 at 35.

[4] *See United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004).

[5] 18 U.S.C. § 3663A(a); 18 U.S.C. § 3663A(c)(1)(A)(ii).

[6] 18 U.S.C. § 3664(g)(1).

[7] 18 U.S.C. § 3664(g)(2).

The Court acknowledges that Ms. Brandner does not perceive herself to be a victim of Dr. Brandner under her definition of that term. However, the Court must apply the definition of the term "victim" that Congress has provided in the MVRA. That act defines a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."[8] The Ninth Circuit has explained that "[a] victim for restitution purposes is a person who has suffered a loss caused by the specific conduct that is the basis of the offense of conviction."[9] "The government bears the burden of proving [by a preponderance of the evidence] that a person or entity is a victim for purposes of restitution" and proving the amount of the loss.[10]

Applying the MVRA's definition of victim, the Court concludes that Sheila Brandner is a victim of Dr. Brandner's wire fraud scheme. The jury found Dr. Brandner guilty of four counts of wire fraud: one with respect to the wired letter from the fictitious "Frederico Rodriguez," which falsely indicated that there was a $3.25 million promissory note held by "Dakota Investments" that could not be cancelled. The other three counts all related to wired forms regarding the $1.24 million in Pensco funds.[11] As a direct and proximate result of each of these transactions, Ms. Brandner suffered the loss of her marital interest in these funds. But for Dr. Brandner's illegal wire fraud transactions, Ms. Brandner's share

---

[8] 18 U.S.C. § 3663A(a)(2).

[9] *United States v. Gossi*, 608 F.3d 574, 579 (9th Cir. 2010) (citations omitted).

[10] *Id.*

[11] Docket 54 at 6; Docket 262.

of the marital estate would not have been secretly moved out of the country and ultimately seized by the Government when Dr. Brandner later attempted to secretly move the funds back into the United States.

Dr. Brandner also asserts that the law firm of Attorney Robert Woofter was not a victim of the wire fraud, maintaining that the wire transactions of which Dr. Brandner was convicted "did not directly or proximately harm Woofter."[12] Instead, Dr. Brandner asserts that Mr. Woofter "was harmed only because he was not paid by his client."[13] It is not disputed that Mr. Woofter's firm is owed $27,000 in legal fees for work that Mr. Woofter performed for Sheila Brandner in connection with the Brandners' divorce. In its Amended Findings of Fact and Conclusions of Law in the Brandner divorce, the Alaska divorce court held that it would generally have required each party to bear his or her own legal fees, but in the Brandners' case the divorce court ordered Dr. Brandner to pay all of Sheila Brandner's fees, including the $27,000, "[b]ecause Sheila's legal fees were impacted by Michael's intentional secreting of assets and his actions that led to her being destitute."[14] Based on the divorce court's findings, as well as the balance of the record in this case, including Mr. Woofter's testimony at trial, the Court finds that Mr. Woofter's unpaid legal fees were directly and proximately caused by Dr. Brandner's wire fraud. But for Dr. Brandner's wire fraud, Ms. Brandner would have had available her share of the secreted funds from which to pay Mr. Woofter's legal fees, and the amount of those fees would

---

[12] Docket 349 at 2.

[13] *Id.*

[14] Docket 301-1 at 14.

have been considerably less. Instead, Mr. Woofter's legal fees remain unpaid and should be included in the restitution award.

Dr. Brandner also takes issue with the amount of restitution to be awarded to Shelia Brandner. He correctly observes that the amount of intended loss for Sentencing Guidelines purposes is not determinative of the amount of restitution. The Ninth Circuit has explained:

> [R]estitution clearly focuses on the *victim*, not the individual defendant. Restitution seeks to compensate the *victim* for all the *direct and proximate losses* resulting from the defendant's conduct, not only for the reasonable foreseeable losses. The purpose of restitution is to put the victim back in the position he or she would have been but for the defendant's criminal conduct.[15]

Thus, the purpose of restitution is different from the purpose of sentencing, and a court should not look to the advisory Sentencing Guidelines for calculating a victim's losses.[16] Rather, in determining restitution, the focus should be on compensating a victim for the actual loss proximately caused to that victim by the defendant's conduct.

Here, the amount of Sheila Brandner's actual loss can be determined by reference to the divorce court's Amended Findings of Fact and Conclusions of Law.[17] The divorce court ordered the entire Pensco account to be awarded to Sheila Brandner, valued at $1,264,700. Due to Dr. Brandner's wire fraud, Sheila Brander has received none of these

---

[15] *United States v. Gossi*, 608 F.3d 574, 581 (9th Cir. 2010) (emphasis in original).

[16] *Id.* at 582.

[17] Docket 301-1.

3:13-cr-00103-SLG, *United States v. Brandner*
Order on Restitution
Page 5 of 11

funds. Therefore, the entire Pensco amount should be included in Ms. Brandner's restitution award.

In addition to the Pensco funds, there was approximately $3.25 million in other funds that Dr. Brandner secretly moved to Central America. Dr. Brandner created a fictitious promissory note for $3.25 million in an effort to restrict both the divorce court and Sheila Brandner's access to these funds. The divorce court awarded Sheila Brandner an *overall* 60% of the marital estate. Combining the value of all the property listed in the Amended Findings of Fact and Conclusions of Law with the $3.25 million promissory note, the total estate as valued by the divorce court was $5,033,669. Ms. Brandner's 60% share of that estate totals $3,020,201. Of this award, Ms. Brandner received $387,035 at the time of the divorce, mostly derived from the value of the marital home. She was also awarded the Pensco account, which she has not received, but is valued at $1,264,700. Accordingly, to achieve a 60% distribution of the estate to Ms. Brandner, she is entitled to $1,368,466 of the $3.25 million note proceeds.[18]

This $1,368,466 amount, combined with the Pensco funds of $1,264,700, is the total amount of restitution that Ms. Brandner should receive. By these calculations, the amount of restitution due to Ms. Brandner is **$2,633,166**.[19] Because the Court has the

---

[18] The Court has not included the 9% interest allegedly due on the $3.25 million fictitious note.

[19] The Government asserts that the amount of restitution due to Ms. Brandner is $3,259,700. *See* Docket 342 at 11. It reaches this amount by including in the award the full 60% of the total original funds invested in the promissory note, $3,325,000. But in the Court's view, this amount fails to account for the divorce court's award of substantial other assets to Ms. Brandner with a value in excess of the assets awarded to Dr. Brandner, as detailed at Docket 301-1 at 12 of the divorce court's findings, and the divorce court's order of an *overall* 60/40 division, and not an award of 60% of the promissory note proceeds to Ms. Brandner. (*See* Docket 301-1 at 11). For apart from the $3.25 million note, the divorce court awarded Sheila Brandner assets with a

benefit of the divorce court's findings as to the division of the parties' marital property, no evidentiary hearing was necessary to resolve this issue.

Dr. Brandner next asserts that restitution should not be awarded because the "chain of potential causation was broken both by the federal government's seizure of and refusal to return Sheila Brandner's funds to her and also by Sheila Brandner's own totally unforeseeable refusal to seek the return of her divorce court awarded funds."[20] The applicable case law specifies that a loss cannot be too far removed from a defendant's conduct. As the Ninth Circuit has explained, a "[d]efendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct."[21] Here, the Court does not find either the Government's seizure of the funds when Dr. Brandner attempted to return them to the United States, or Ms. Brandner's delay in seeking the return of the funds from the Government, to constitute an intervening cause so distinct from Dr. Brandner's original misconduct so as to constitute a superceding cause that precludes the entry of an award of restitution.[22]

---

value of $1.652 million, including the Pensco funds and the marital home, while Dr. Brandner was awarded other assets and debts with a combined value of only $131,669. See Docket 301-1 at 12. Stated differently, the divorce court's findings evidence an intent to divide the $3.25 million note proceeds in a manner that would effectuate an overall 60/40 division of the entire estate.

[20] Docket 349 at 5.

[21] *United States v. Gamma Tech Industries, Inc.*, 265 F.3d 917, 928 (9th Cir. 2001).

[22] To the extent that Sheila Brandner is successful in her belated efforts to obtain any of the seized funds, then the amount of restitution should be decreased by the amount of any such recovery she receives.

Finally, there remains the question of how the Court should proceed if Sheila Brandner refuses the restitution that the Court is required to award to her under the MVRA. The Ninth Circuit has not addressed this precise issue.[23] Other circuits that have addressed the issue have taken different approaches. In the Second Circuit, a district court faced with a victim disclaiming restitution must still order restitution, but may itself assign the award to the CVF. A victim, the Second Circuit reasons, "may not veto the obligation of the District Court to impose orders of restitution."[24] The Tenth Circuit, by contrast, has held that a district court cannot assign restitution to the CVF, and if a victim refuses restitution without assigning her interest, restitution is no longer mandatory.[25] The Seventh Circuit has also rejected the contention that a district court can assign restitution to the CVF on behalf of the victim who refuses it.[26]

The Court finds the Second Circuit's approach to be more consonant both with the statutory text and structure and with the Ninth Circuit's general approach to restitution, and adopts and applies that approach here.[27] Dr. Brandner has been convicted of four

---

[23] *But see United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011) (holding that a prior settlement agreement does not preclude restitution); *United States v. Edwards*, 595 F.3d 1004, 1014 (9th Cir. 2010) (holding that MVRA mandates criminal restitution and cannot be waived by prior civil settlement); *United States v. Cloud*, 872 F.2d 846, 854 (9th Cir. 1989) (holding that victims could not waive their right to restitution because the purpose of criminal restitution is to penalize).

[24] *United States v. Johnson*, 378 F.3d 230, 245 (2d Cir. 2004).

[25] *United States v. Speakman*, 594 F.3d 1165, 1175 (10th Cir. 2010).

[26] *United States v. Pawlinski*, 374 F.3d 536, 539–40 (7th Cir. 2004).

[27] *See United States v. Hankins*, No. 6:01-cr-60100-AA, slip op. at 8–9 (D. Or. Oct. 30, 2015), *appeal docketed*, No. 15-30345 (9th Cir. Nov. 12, 2015) (finding *Johnson* persuasive because the Senate originally considered a version of the Act that required courts to order rejected

3:13-cr-00103-SLG, *United States v. Brandner*
Order on Restitution
Page 8 of 11

counts of wire fraud, and so the MVRA requires the Court to order restitution to the victim of these crimes, Ms. Brandner.[28] This mandatory directive to the sentencing court has only two enumerated exceptions: it shall not apply if "the number of identifiable victims is so large as to make restitution impracticable" or if calculating the victim's losses would unreasonably prolong the sentencing process.[29] Neither exception applies in this case; restitution is therefore required.[30]

A victim, however, cannot be compelled to accept restitution. But a victim's right to refuse restitution, and her related right to assign her interest to the CVF, cannot defeat a court's obligation to impose restitution in the first place. The statutory provisions detailing Ms. Brandner's rights cannot "reasonably be interpreted as carving out an exception to the mandatory nature of § 3663A."[31]

It is true that "[t]he primary and overarching goal of the MVRA is to make victims of crime whole."[32] This is not, however, the sole purpose of the MVRA. Rather, the Ninth Circuit recognizes that restitution in the criminal context is also "a means of achieving

---

restitution be deposited in the CVF).

[28] *See United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015) (citing *United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013)).

[29] 18 U.S.C. § 3663A(c)(3).

[30] *Cf. In re Morning Star*, 711 F.3d 1142, 1144 (9th Cir. 2013) (granting writ of mandamus ordering district court to reconsider denial of restitution when such denial was not clearly based on enumerated exception).

[31] *United States v. Johnson*, 378 F.3d 230, 245 (2d Cir. 2004).

[32] *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004).

penal objectives such as deterrence, rehabilitation, or retribution."[33] And, as the Supreme Court has noted in discussing restitution generally, "[t]he victim has no control over the amount of restitution awarded or over the decision to award restitution."[34] Because both the text of the MVRA and Ninth Circuit precedent "require[] a district court to 'order a defendant to make restitution to a victim,'"[35] the Court holds that an award of restitution is required even when a victim indicates her intent to reject it.

Neither 18 U.S.C. § 3663A nor 18 U.S.C. § 3664 explicitly authorizes a district court to assign the victim's interest to the CVF when the victim both disclaims restitution and does not herself assign her rights to the CVF. And yet as the Second Circuit observed in *Johnson*, there is no statute that explicitly precludes a court from doing so.[36] In order to perform its congressionally mandated obligation to order restitution, while simultaneously respecting the statutory rights of the victim, a district court must necessarily be permitted to assign a victim's disclaimed interest in restitution to the CVF.

---

[33] *United States v. Cloud*, 872 F.2d 846, 854 (9th Cir. 1989) (citing *Kelly v. Robinson*, 479 U.S. 36, 52 (1986)); *see also Paroline v. United States*, 134 S. Ct. 1710, 1726 (2014) (noting that "[t]he primary goal of restitution is remedial or compensatory, but it also serves punitive purposes" (citations omitted)).

[34] *Kelly v. Robinson*, 479 U.S. 36, 52 (1986).

[35] *United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015) (quoting *United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013)).

[36] In reaching its decision in *Johnson,* the Second Circuit considered the legislative history of the MVRA as well. The Senate had considered—and rejected—a version of the bill that *required* the district court to assign rejected restitution to the CVF. The Second Circuit reasoned that rejection of this version indicated not that assignment by the court was prohibited, but rather only that it was not mandatory. *See United States v. Johnson*, 378 F.3d 230, 245 n.21 (2d Cir. 2004). The Court notes that, regardless, the rejected bill buttresses the interpretation of the MVRA as requiring restitution even when the victim refuses it.

In this case, the Court finds that the payment of the restitution to the CVF is warranted in the event that Ms. Brandner disclaims her interest in it and does not assign her rights to the CVF. Accordingly, the Court directs restitution be made to Ms. Brandner, or, if she disclaims such restitution, to the CVF.

## CONCLUSION

For the foregoing reasons, the United States' Motion for Order of Restitution at Docket 342 is GRANTED.

The Clerk of Court is directed to enter an Amended Judgment that orders restitution in the amount of **$2,633,166 payable to Shelia Brandner and $27,000 payable to the Law Firm of Aglietti, Offret & Woofter**, for the legal work of Robert Woofter. In the event that Sheila Brandner disclaims restitution in this case, the restitution awarded to her shall be paid to the Crime Victims Fund.

DATED this 6th day of September, 2016 at Anchorage, Alaska.

    /s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE